UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BARBARA MINGES,
Personal Representative of the
Estate of Nicholas Jaeger,

      Plaintiff,

v.

BERRIEN COUNTY,
KARIN LATRICE THOMAS,
UNKNOWN PARTY,
JUSTIN WILLIAMS, and
WELLPATH,

      Defendants.
_____/

Case No. 1:23-cv-1308

Hon. Paul L. Maloney

**REPORT AND RECOMMENDATION**

This lawsuit involves the death of Nicholas Jaeger ("Mr. Jaeger") in the Berrien County Jail on April 7, 2022. *See* Compl. (ECF No. 1, ¶ 71, PageID.9). Plaintiff sued two sets of defendants: Berrien County, Deputy Jane Doe, and Deputy Justin Williams (the "Berrien County defendants"); and Wellpath, LLC ("Wellpath") and Licensed Practical Nurse (LPN) Karin Thoms (the "Wellpath defendants"). This matter is now before the Court on the Berrien County defendants' partial motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) and motion for a more definite statement pursuant to Fed. R. Civ. P. 12(e) (ECF No. 14).

    **I.**    **Background**

    **A.**    **Allegations**

Plaintiff's allegations are summarized as follows. On April 6, 2022, Mr. Jaeger was arrested on outstanding warrants and taken to the Berrien County Jail ("Jail"). Compl. at PageID.5.

Upon arrival, a Jail nurse saw Jaeger, who indicated that he last used heroin the night of April 5, 2022. *Id*. Given this information, jail staff placed him in a medical observation cell with other inmates at 7:30 a.m. *Id*. While in the cell, Jaeger allegedly told another inmate that he was "going through withdrawals" after taking "eight or nine pills right before getting arrested." *Id*. At some point, Jaeger fell asleep while eating, causing his face to fall in a food tray and then on the floor. *Id*. Defendant Deputies Williams and Doe "watched this happen" and "laughed". *Id*.

Mr. Jaeger was in so much distress, that every time an officer or nurse came to the cell, the other inmates had to shake Jaeger to wake him up. *Id*. at PageID.6. Other inmates pushed the intercom button multiple times to ask for medical help for him. *Id*. During the night of April 6th, while everyone was sleeping, Jaeger began making "gurgling" or "gasping" noises. *Id*.

During the night of April 6th, defendant LPN Karin Thomas worked as the 6:00 p.m. to 6:00 a.m. nurse. *Id*. at PageID.7. At 10:00 p.m. on April 6th, Thomas claimed that she gave Mr. Jaeger his nighttime medication, but other inmates dispute this. *Id*. Thomas also claimed that she performed a withdrawal check at this time, "taking a set of vitals and an assessment of the inmate's current state." *Id*. Plaintiff believes that Thomas did not check Jaeger's vitals. *Id*.

At midnight on April 7th, guards asked if anyone in the medical observation cell wanted to change their clothing. *Id*. When Jaeger did not respond to the guards, they nudged him, he grunted "and the guards ignored his obvious and serious medical needs." *Id*. When inmates observed Jaeger "gasping and making strange and unnatural movements with his arms," two inmates told officers to check on him, but the officers refused. *Id*. at PageID.7-8.

Between 4:00 a.m. and 4:30 a.m., Thomas came to male receiving to administer morning medication. *Id*. at PageID.8. Thomas called out to Mr. Jaeger several times and initially received no response. *Id*. Eventually, Jaeger stretched his arms out from under his blanket and

2

looked at her. *Id*. Thomas told Jaeger she was doing withdrawal checks and asked him to come up to the window. *Id*. Jaeger could not get up to go to the slot to receive medication or to do a withdrawal check. *Id*. Thomas announced last call for withdrawal check and closed the slot without conducting the withdrawal check or administering medication. *Id*.

At 6:27 a.m. Mr. Jaeger's body went stiff and he rolled off his sleeping mat and onto the floor. *Id*. At the same time, a deputy checked the cell and checklist on the window. *Id*. Jaeger gasped several times between 6:30 a.m. and 6:33 a.m. and did not move after that. *Id*. At 6:54 a.m., a deputy looked into the cell, at which time Jaeger laid dead behind the bench. *Id*. at PageID.8-9. At 7:01 a.m., a deputy again looked into the cell and did the checklist on the window while Jaeger was on the ground behind the bench. *Id*. at PageID.9.

When the deputies arrived with breakfast, all of the inmates got up except for Mr. Jaeger. *Id*. When Jaeger did not respond to efforts to wake him up, the deputies entered the cell. *Id*. At 7:30 a.m., the nurses received a call from the deputies regarding a "man down." *Id*. Jaeger was pronounced dead at 8:02 a.m. *Id*. Plaintiff alleged that Mr. Jaeger's death was a direct result of defendants' explicit disregard of policy, gross negligence, and deliberate indifference to his health and welfare. *Id*.

### B. Plaintiff's claims

Plaintiff has alleged three counts: Count I ("42 U.S.C. § 1983 Constitutional Deprivations (Against Individual Defendants)"); Count II ("*Monell* Claim (As to Defendant County of Berrien and Defendant Wellpath)"); and Count III ("Americans with Disabilities Act (ADA) Violation – Failure to Accommodate (As to Berrien County)"). Compl. at PageID.14-23.

## II. Motion to dismiss

### A. Legal standard

Berrien County moved to dismiss the ADA claim pursuant to Fed. R. Civ. P. 12(b)(6) because it fails to state a claim upon which relief may be granted. A complaint may be dismissed for failure to state a claim if it fails to give the defendants a fair notice of the claim and the grounds upon which it rests. *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544, 555 (2007).

> [A] complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations and quotation marks omitted). In making this determination, the complaint must be construed in the light most favorable to the plaintiff, and its well-pleaded facts must be accepted as true. *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987).

### B.    Discussion

In Count III, plaintiff alleged that Berrien County violated the ADA. "Title II of the Americans with Disabilities Act provides that 'no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.'" *Gohl v. Livonia Public Schools School District*, 836 F.3d 672, 681 (6th Cir. 2016) (quoting 42 U.S.C. § 12132).

> To establish a prima facie case of intentional discrimination under Title II of the ADA, a plaintiff must show that: (1) she has a disability; (2) she is otherwise qualified; and (3) she was being excluded from participation in, denied the benefits of, or subjected to discrimination under the program because of her disability
.
*Anderson v. City of Blue Ash*, 798 F.3d 338, 357 (6th Cir. 2015) (footnote omitted).

4

Plaintiff's ADA claim is that Mr. Jaeger "was an individual with a disability in accordance with the ADA, in that he had a heroin addiction that substantially limited one or more of his major life activities." Comp. at PageID.22. Plaintiff alleged,

> Defendant [sic] had a duty under the ADA to accommodate [Mr. Jaeger] unless the accommodation would impose an undue hardship. Defendants' duty to accommodate [Jaeger] includes, but is not limited to, providing him with ongoing adequate medical care and monitoring when Defendants were on notice that [Jaeger] was experiencing symptoms of withdrawal.

*Id*.

The ADA is not an appropriate federal cause of action to challenge the sufficiency of a medical or mental health treatment. *See Carnahan v. Luther*, No. 1:24-cv-319, 2024 WL 2952724 at *6 (W.D. Mich. June 12, 2024) (citing *Baldridge-El v. Gundy*, No. 99-2387, 2000 WL 1721014 at *2 (6th Cir. Nov. 8, 2000) ("[N]either the RA nor the ADA provide a cause of action for medical malpractice."); *Watson v. Mohr*, No. 2:17-CV-457, 2017 WL 6383812 at *5 (S.D. Ohio Dec. 14, 2017), *R&R adopted*, 2018 WL 836484 (S.D. Ohio Feb. 13, 2018) ("Neither medical treatment decisions nor medical malpractice, however, may form the basis of a claim under the ADA."). "Put another way, the ADA does not provide a cause of action to challenge the adequacy of the treatment of disabilities." *Whitley v. Michigan Department of Corrections*, No. 1:22-cv-448, 2022 WL 16847679 at *3 (W.D. Mich. Nov. 10, 2022). Accordingly, plaintiff's ADA claim against Berrien County based on his alleged disability of heroin addiction should be dismissed.

### III.    Motion for a more definite statement

Fed. R. Civ. P. 12(e) provides that "[a] party may move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response." "If a pleading fails to specify the allegations in a manner that provides sufficient notice, a defendant can move for a more definite

5

statement under Rule 12(e) before responding." *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 514 (2002). However, "[f]ederal courts generally disfavor motions for more definite statements." *E.E.O.C. v. FPM Group, Ltd.*, 657 F.Supp.2d 957, 966 (E.D. Tenn. 2009). Such motions "should not be granted unless the complaint is so excessively vague and ambiguous as to be unintelligible and as to prejudice the defendant seriously in attempting to answer it." *Kok v. First Unum Life Insurance Company*, 154 F.Supp.2d 777, 781-82 (S.D.N.Y. 2001).

Plaintiff seeks relief pursuant to 42 U.S.C. § 1983, which "provides a civil cause of action for individuals who are deprived of any rights, privileges, or immunities secured by the Constitution or federal laws by those acting under color of state law." *Smith v. City of Salem, Ohio*, 378 F.3d 566, 576 (6th Cir. 2004). To state a § 1983 claim, a plaintiff must allege two elements: (1) a deprivation of rights secured by the Constitution and laws of the United States, and (2) that the defendant deprived him of this federal right under color of law. *Jones v. Duncan*, 840 F.2d 359, 360-61 (6th Cir. 1988); 42 U.S.C. § 1983.

"Personal involvement is necessary to establish section 1983 liability." *Murphy v. Grenier*, 406 Fed. Appx. 972, 974 (6th Cir. 2011). *See Rogan v. Menino*, 175 F.3d 75, 77 (1st Cir. 1999) ("It is axiomatic that the liability of persons sued in their individual capacities under section 1983 must be gauged in terms of their own actions."). Here, plaintiff is suing a nurse (Thomas), a deputy (Williams), and an unknown deputy (Doe). Mr. Jaeger was at the jail on April 6 and 7, 2022. Plaintiff set forth a detailed, 57-paragraph account of what occurred at the jail during that time. *See* Compl. ¶¶ 16-73, PageID.4-9. Despite plaintiff's detailed account of this brief detention, she does not set out any particular wrongful action committed by any particular defendant. Rather, plaintiff engaged in a variant of group pleading[1] alleging: that an unspecified "Defendant" violated

---

[1] "Group pleading" is a litigation tactic which raises claims against multiple defendants without regard to a defendant's particular actions. *See, e.g., Courser v. Michigan House of Representatives*, 404 F. Supp. 3d 1125, 1140 (W.D. Mich.

6

Mr. Jaeger's rights under the Fourth, Eighth and Fourteenth Amendments; that this "Defendant" acted with gross negligence and deliberate indifference to Jaeger's "safety, protection and medical needs;" and then listed 13 unnumbered "bullet points" setting out boilerplate categories of alleged misconduct.[2] *See id*. at ¶¶ 122-124, PageID.15-17.

Count II is not directed at any particular defendant. For this reason, it is so excessively vague and ambiguous that it seriously prejudices the individual defendant who is attempting to answer it. In this regard, the Court considers Count II as "unintelligible" because it is so vague that a reasonable defendant could not understand which claims applied to him or her.[3] For example, in ¶ 124, LPN Thomas and Deputy Williams must respond to a list of 13 unnumbered boilerplate allegations in bullet points which are directed at "Defendant", even though the complaint does not specify which defendant. In addition, even though gross negligence is a state law claim which is not alleged in this lawsuit, ¶ 124 alleges that "defendant" acted with both "gross

---

2019) ("[a] complaint which lumps all defendants together and does not sufficiently allege who did what to whom, fails to state a claim for relief because it does not provide fair notice of the grounds for the claims made against a particular defendant.") (internal quotation marks omitted).

[2] The bullet points are as follows: Failing to properly render the necessary medical attention to a prisoner who was known to be a drug user and was going through withdrawals; Failing to properly train correction officers in the evaluation of whether a prisoner needs medical treatment; Failing to provide Plaintiff decedent [sic] with appropriate supervision given his medical needs; Failing to complete required withdrawal checks which includes taking a set of vitals and an assessment of the inmate's current state; Failing to observe and check on Plaintiff decedent [sic] as requested and required; Failing to observe and check on Plaintiff decedent [sic] through continuous camera monitoring; Failing to properly address Plaintiff decedent's [sic] withdrawal symptoms, and decedent's health and safety; Failing to promptly respond to Plaintiff decedent's [sic] recognizable medical emergency in reckless disregard and deliberate indifference to decedent's health and safety; Failing to contact medical or nursing personnel when Defendants knew that Nicholas was experiencing withdrawal symptoms; Failing to place Plaintiff decedent [sic] in a safe environment so that he could be observed by medical personnel; Failing to intervene and prevent the ongoing constitutional violations against Nicholas by Co-Defendants, where Defendants had numerous reasonable opportunities to intervene; Failing to properly supervise Plaintiff decedent [sic] throughout the night of April 6, 2022, to the early morning of April 7, 2022; and, Failing to act in other ways that exposed Plaintiff decedent [sic] to a known, extreme risk to his health and safety that may or will become known during discovery. Compl. at PageID.15-17.

[3] "Unintelligible" is "[t]hat which cannot be understood." *Black's Law Dictionary* (Fifth Edition 1979), p. 1374.

7

negligence" and "deliberate indifference".  In summary, the individual defendants cannot simply admit or deny the allegations in Count II as required by Fed. R. Civ. P. 8(b)(1)(B).

Accordingly, the Berrien County defendants' motion for more definite statement should be granted as to Count II.  Plaintiff should file an amended complaint alleging facts to support her claims based on the specific conduct of each individual defendant.  Plaintiff should also remove bullet points and set out her allegations in discreet paragraphs.  *See* Fed. R. Civ. P. 10(b) ("A party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances.").

As to Count III, plaintiff alleged a § 1983 claim under *Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (1978) against two defendants: Berrien County (a political subdivision of the State of Michigan) and Wellpath (a limited liability corporation that employed defendant LPN Thomas). For plaintiff to prevail in a § 1983 claim against Berrien County and Wellpath, she must show that the alleged federal violation occurred because of a municipal policy or custom.

> [A] local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983.

*Monell*, 436 U.S. at 694.[4]  A "policy" includes a "policy statement, ordinance, regulation, or decision officially adopted and promulgated" by the policymaker.  *Monell*, 436 U.S. at 690.  A "custom" consists of practices which have become permanent and well settled.  *See id*. at 690-91.

---

[4] With respect to Wellpath, *see Winkler v. Madison County*, 893 F.3d 877, 890, 904 (6th Cir. 2018) ("The principle is well settled that private medical professionals who provide healthcare services to inmates at a county jail qualify as government officials acting under the color of state law for the purposes of § 1983" and that a private entity "that contracts to provide medical services at a jail can be held liable under § 1983 because it is carrying out a traditional state function.").

Despite the fact that Berrien County and Wellpath are two separate entities with their own policies and customs, plaintiff's Count III simply referred to a bullet point list of "policies, procedures, regulations, customs and/or lack of training" of "Defendant" which "exhibited a reckless indifference toward its prisoners."[5] Compl. at PageID.20. As discussed, *supra*, a defendant cannot admit or deny these types of vague allegations. Accordingly, Berrien County's motion for more definite statement should be granted as to Count III. Plaintiff should file an amended complaint which identifies each particular policy or custom which injured Mr. Jaeger and the entity which enacted the policy or developed the custom.[6]

## IV. RECOMMENDATION

Accordingly, I respectfully recommend that defendants Berrien County, Deputy Jane Doe, and Deputy Justin Williams' Motion to dismiss filed pursuant to Fed. R. Civ. P. 12(b)(6) (ECF No. 14) be **GRANTED** as to Count III (plaintiff's ADA claim).

I further recommend that defendants' Motion for a more definite statement filed pursuant to Fed. R. Civ. P. 12(e) be **GRANTED** as to Counts I and II, and that plaintiff file an

---

[5] The bullet points are as follows: Defendant's failure to staff the jail with competent medical personnel; Defendant's failure to monitor their correctional officers and medical personnel to ensure that they adequately monitor and supervise prisoners who have serious medical needs; Defendant's failure to have proper policies and procedures, and training to deal with prisoners experiencing withdrawal symptoms and ensure that the policies and/or procedures are followed, which include serial examinations by competent and licensed medical health personnel like RNs and Doctors as well as its failure to ensure the correctional officers conduct timely and adequate rounds and record their observations of the prisoners every 30 minutes as required by their own policies and/or procedures; Defendant's failure to require that an RN, Doctor, or other Health Professional perform a full and complete examination of a prisoner experiencing withdrawal symptoms who was specifically placed in a medical observation cell; Defendant's failure to have proper policies and procedures, and training to deal with prisoners who have drug addiction to ensure that BCJ staff personnel can immediately and appropriately respond and act when a prisoner is in distress and is experiencing withdrawal symptoms; Defendant's failure to fully investigate and discipline its correctional officers and/or medical personnel who do not abide by policies and procedures relative to providing medical care for serious conditions; and, All other breaches learned through the course of discovery. Compl. at PageID.19-20.

[6] Presumably, plaintiff identified the specific policies and customs at issue before filing this lawsuit. *See Checkpoint Systems, Inc. v. Hangzhou Century Co.*, No. 5:11CV1199, 2012 WL 2159257 at *7 (N.D. Ohio June 13, 2012) ("A plaintiff and his counsel have a duty to investigate the legal and factual basis for any claims brought").

amended complaint with respect to those counts.

.

Dated:  August 19, 2024　　　　　　　　　　　/s/ Ray Kent  
　　　　　　　　　　　　　　　　　　　　　　RAY KENT  
　　　　　　　　　　　　　　　　　　　　　　United States Magistrate Judge

ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report.  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order.  *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).